OPINION
{¶ 1} Defendant-appellant Timothy Gayheart appeals from his conviction and sentence for: (1) Operating a Motor Vehicle Under the Influence of Alcohol, a Drug of *Page 2 
Abuse, or a Combination of Them, in violation of R.C. 4511.19(A)(1)(a); (2) Failing to Stop After an Accident, in violation of R.C. 4549.02; and (3) Falsification, in violation of R.C. 2921.13.
 {¶ 2} Gayheart contends that the trial court committed plain error by admitting, without objection, evidence of his use of cocaine the night before, or the morning of, the alleged offense, and that his trial counsel was ineffective for having failed to object to the admission of this evidence. We conclude that this evidence would appear, at least, to be material to the offense with which Gayheart was charged, so that it was neither plain error to admit the evidence, nor ineffective assistance of counsel to have failed to object to the admission of the evidence.
 {¶ 3} Gayheart contends that his trial counsel was ineffective for having failed to object to a cross-examination question put to a witness who testified in his defense as calling for speculation. We conclude that the question was properly addressed to the logical force of the inference — to the effect that Gayheart was not driving his car at the time of the alleged offense — presented by the witness's direct testimony.
 {¶ 4} Finally, Gayheart contends that his convictions are against the manifest weight of the evidence. This contention is addressed to the OMVI conviction. We conclude that the testimony of two witnesses that they saw Gayheart driving his car immediately after it collided with a parked car, together with Gayheart's admission to the arresting police officer that he was the driver of the car, are ample evidence of guilt.
 {¶ 5} The judgment of the trial court is Affirmed.
 I {¶ 6} At about 10:53 p.m. in mid-September, 2008, three Fairborn police *Page 3 
officers: Benjamin Roman; Daniel Foreman; and an Officer Kraker, were dispatched to the scene of a reported hit-and-run accident involving a white Chevy Camaro-like car and a parked car. Margaret Maurer and her boyfriend, Larry Hicks, told the officers that they had heard a loud crash outside, as they were watching television in Maurer's apartment, looked out Maurer's front door, and saw a white car trying to pull away from where it had collided with a parked vehicle.
 {¶ 7} Maurer testified as follows:
 {¶ 8} "A. We were just watching TV, and then we heard an enormous crash. It was obvious that 2 vehicles had collided. And immediately — I had the cordless phone next to me — I jumped up and looked out the window and called 911. At that time, I saw a white car trying to pull away from — it had hit a truck. And this has happened before on Harvard. It was trying to pull away, but didn't quite get away. And then it finally did, and then it slowed. Where the incident occurred is-
 {¶ 9} "Q. How many houses away were you?
 {¶ 10} "A. 1040, I'm going to say approximately 6, 7, maybe a little bit more. The car was dragging the front end. The impact of it had made the tire go under and fluids. So it was dragging and sparks. And it had slowed in front of my apartment where the driveway is. And the interior light came on, and the man reached down and grabbed a lighter and lit a cigarette and then just blew the stop sign.
 {¶ 11} "Q. Is that — when you say, a man, was he in the driver's seat?
 {¶ 12} "A. Yes, he was.
 {¶ 13} "Q. Could you tell if there was anybody else in the car?
 {¶ 14} "A. I could tell there was someone else. It looked to me like a child. *Page 4 
That's why I was frightened. When I called 911, I didn't know if it was a child or woman. It was a small frame person. And I'm a large person. I couldn't tell. I could see 2 profiles, basically, and it was dark."
 {¶ 15} Hicks also testified. His testimony was consistent with Maurer's, although he was less certain of the gender of the driver. He did testify that he believed the driver was a man.
 {¶ 16} Soon after taking the report, Officer Roman found a vehicle matching the description in the parking lot of a Subway restaurant on Kauffman Avenue. The vehicle had "[b]ig body damage to the front passenger side of the vehicle," and the front tire "rim had melted from where it had been running on just the rim, not the tire." Roman saw Gayheart pushing the vehicle, with Brenda Sullivan sitting in the driver's seat. According to Roman, Sullivan was about five feet, one inch tall, and would have had to have had the driver's seat be pushed forward from where it was to have been able to reach the pedals. To Officer Roman, both Gayheart and Sullivan were obviously intoxicated.
 {¶ 17} Gayheart admitted to Foreman, in Roman's presence, that he, Gayheart, was driving the car at the time of the crash. Later, he denied that he was the driver. Still later, he apologized for lying, and admitted that he was the driver. Finally, he recanted this admission, as well.
 {¶ 18} Tommi Lynn Radford testified for the defense. She testified that she, Sullivan, and Gayheart were at Sullivan's apartment on the afternoon of the day of the offense. Gayheart arrived between 3:00 and 4:00 in the afternoon. He had had five or six beers by this time. They went to a restaurant in Enon, called Legends, for dinner at around 8:00 or 8:30 p.m. They all had drinks while they were there. *Page 5 
 {¶ 19} Defense counsel elicited the following on Radford's direct examination:
 {¶ 20} "Q. So about 9:45, you get your food. How long did you sit there before you decided to leave?
 {¶ 21} "A. We left in a hurry. We didn't finish our food. I remember having to chug my drink to leave. And we left probably around 10:00, 10:15."
 {¶ 22} On Radford's cross-examination, the following colloquy occurred:
 {¶ 23} "Q. You said you had to leave in a hurry. Why was that?
 {¶ 24} "A. We were going to try to get some drugs."
 {¶ 25} The State did not return to this subject in its cross-examination, but defense counsel did, on re-direct, as follows:
 {¶ 26} "Q. You said you all were in a hurry to leave Legends to go get some drugs?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. Which one of the parties was more anxious to go get the drugs, you, Katie or Tim [Gayheart]?
 {¶ 29} "A. Me and Katie."
 {¶ 30} Radford testified that she was a passenger in Gayheart's car on the way back from Legends, and that Sullivan was driving. Radford testified that Sullivan's erratic driving resulted in Radford's demanding to be let out of the car, and she was.
 {¶ 31} During Radford's cross-examination, the following colloquy occurred, without objection by defense counsel:
 {¶ 32} "Q. And you indicated that Katie [Brenda Sullivan] was driving crazy, that you were in an argument with her because she was driving crazy, right? *Page 6 
 {¶ 33} "A. Yes.
 {¶ 34} "Q. Isn't it possible that Mr. Gayheart could also have had that same problem? Hey, this is my car. She is driving crazy, I need to drive.
 {¶ 35} "A. Yes.
 {¶ 36} "Q. That's possible?
 {¶ 37} "A. Yes."
 {¶ 38} Gayheart was arrested. He refused to take a breath test, and was charged with Operating a Motor Vehicle While Under the Influence of Alcohol, Drugs, or a Combination of Them; Failure to Stop After an Accident; and Falsification.
 {¶ 39} Following a jury trial, Gayheart was convicted as charged on all three charges. From his conviction and sentence, Gayheart appeals.
 II {¶ 40} Gayheart's First Assignment of Error is as follows:
 {¶ 41} "THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE ADMISSION OF PROHIBITED PRIOR BAD ACTS EVIDENCE."
 {¶ 42} The State elicited from Radford, during cross-examination, that the night before, until about 5:00 in the morning of the day of this offense she, Sullivan and Gayheart had used cocaine and alcohol. As noted in Part I, above, the State elicited from Radford, in response to the question why they were hurrying to leave Legends, that they wanted to buy drugs. Both of these questions and responses were without objection by defense counsel. Defense counsel followed up on Radford's testimony that they wanted to buy drugs after leaving Legends by eliciting from her that she and *Page 7 
Sullivan were more anxious to buy drugs than Gayheart was.
 {¶ 43} Because there was no objection to these questions, no motion to strike the responses, and no motion for a mistrial, this assignment of error is governed by the plain error standard of review. An error is not plain error unless it can be established that "but for the error, the outcome of the trial clearly would have been otherwise." State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.
 {¶ 44} The admission of the testimony about Gayheart's use of cocaine less than 24 hours before the alleged offense may not even have been error, let alone plain error. There was no testimony concerning the length of time after ingestion that cocaine may continue to impair a person's motor or cognitive abilities, or concerning the length of time after ingestion that cocaine and alcohol, in combination, may impair a person's motor or cognitive abilities. This court is not in a position to take judicial notice concerning this subject.
 {¶ 45} In any event, the admission of testimony concerning Gayheart's use of cocaine on this one occasion does not rise to the level of plain error. In this case, the defense did not dispute that Gayheart was impaired at the time of the collision, as a result of his consumption of alcohol, or that the driver of the car was impaired; the position of the defense was that Gayheart was not the driver of the car.
 {¶ 46} As for the testimony that Gayheart, Sullivan and Radford were in a hurry to leave Legends so that they might buy drugs, it is not clear from the record that the State knew that its question as to why they were in a hurry, which had come out during Radford's testimony, would elicit this response, and the State did not ask any further questions concerning this subject. We are not prepared to hold that there is any *Page 8 
reasonable likelihood that this testimony affected the outcome of the trial, which was determined by whether the jury believed that the State had proven, beyond reasonable doubt, that Gayheart was driving the car at the time of the collision with the parked vehicle.
 {¶ 47} Gayheart's First Assignment of Error is overruled.
 III {¶ 48} Gayheart's Second Assignment of Error is as follows:
 {¶ 49} "APPELLANT'S CONVICTION MUST BE REVERSED DUE TO THE INEFFECTIVENESS OF COUNSEL."
 {¶ 50} Gayheart again cites the admission of evidence, without objection, concerning his cocaine usage less than 24 hours before the offense, and the desire of Gayheart and his companions to purchase drugs after they left Legends, but this time in the context of an ineffective assistance of counsel argument.
 {¶ 51} Counsel admitted to the bar, in good standing, is presumed competent, and a reviewing court should be reluctant to second-guess the strategic decisions made by counsel. "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance." Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 52} The State elicited from Radford testimony that Gayheart had used cocaine, and alcohol, as recently as 5:00 in the morning of the day of the offense, some seventeen hours before the offense. The State did not develop the evidence concerning Gayheart's prior cocaine usage any further. As noted, it is not clear that the admission *Page 9 
of this testimony was even objectionable, in view of the fact that Gayheart was charged with operating a motor vehicle under the influence of cocaine, alcohol, or a combination thereof, and in view of the absence of any testimony concerning the duration of the effects of the ingestion of cocaine, either singly, or in combination with alcohol.
 {¶ 53} Gayheart's trial counsel may reasonably have decided not to object to the admission of this testimony because: (1) it was not clear that an objection would be sustained; (2) the interposition of an objection might have the prejudicial effect of causing the State to introduce testimony linking Gayheart's earlier use of cocaine with his later impairment; (3) the defense was not making an issue of whether Gayheart was impaired, but rather was making an issue of whether Gayheart was driving the car; and (4) the interposition of an objection would merely cause this testimony to have a greater impact upon the jury.
 {¶ 54} We conclude that the failure of Gayheart's trial counsel to have objected to this testimony did not constitute ineffective assistance of counsel.
 {¶ 55} Gayheart next contends that his trial counsel was ineffective for having failed to object to the State's having elicited from Radford, during her cross-examination, that she, Sullivan and Gayheart were in a hurry to leave Legends in order that they might buy drugs. As noted in Part II, above, it is not clear that the prosecutor knew that his question as to why they were in a hurry, which had come out during Radford's direct testimony, would elicit that response, and she did not develop this testimony at all.
 {¶ 56} Gayheart's trial counsel may reasonably have concluded that moving to strike this testimony might merely emphasize it in the minds of the jury. Gayheart's trial counsel evidently decided instead to mitigate its effect by eliciting from Radford, on re-direct, *Page 10 
that Radford and Sullivan were the ones who were more anxious to buy drugs, not Gayheart. We are not prepared to say that this strategy constituted ineffective assistance of counsel. We also conclude that this testimony was not likely to have affected the outcome of the trial, since, again, the issue made up by the defense was not whether Gayheart or the driver of the car was impaired, but whether Gayheart was the driver of the car.
 {¶ 57} Finally, Gayheart contends that his trial counsel was ineffective for having failed to object to the State's having elicited from Radford that it was possible that the same concern that she had over Sullivan's erratic driving, which prompted her to demand to be let out of the car, may have prompted Gayheart, after Radford got out, to have demanded that Sullivan let Gayheart drive. Gayheart contends that this question should have been objected to as having called for speculation.
 {¶ 58} This testimony may not have been competent as affirmative evidence that Gayheart was, in fact, the driver of the car at the time of the collision, for the reason Gayheart suggests. But there was adequate direct proof that Gayheart was the driver of the car. See Part IV, below.
 {¶ 59} Radford's testimony on Gayheart's behalf was not direct proof that Gayheart was not driving the car at the time of the collision. By that time, Radford was neither in the car, nor in a position to see the car, so she could offer no direct evidence concerning who was driving the car at the time of the collision. Radford's testimony constituted circumstantial evidence that Sullivan, not Gayheart, was the driver of the car at the time of the collision, based upon the proposition that once a particular set of facts are proven to have existed — in this instance, that Sullivan was driving the car — it is *Page 11 
reasonable to infer that that set of facts continued to exist for some reasonable period of time, unless some subsequent occurrence intervenes to dissipate that inference.
 {¶ 60} Here, we conclude that the proposition of fact that the State elicited through its cross-examination of Radford — that Gayheart might have had the same motive to take over the driving of his car from Sullivan that Radford had in demanding to be let out of the car — was competent to rebut the inference suggested by Radford's direct testimony.
 {¶ 61} Gayheart's Second Assignment of Error is overruled.
 IV {¶ 62} Gayheart's Third Assignment of Error is as follows:{¶ 63} "APPELLANT'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 64} In our view, there is ample evidence to support the conviction, and this is not "the exceptional case in which the evidence weighs heavily against the conviction." State v. Hancock (2006),108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39.
 {¶ 65} The witnesses Hicks and Maurer testified that they saw Gayheart's car from Maurer's apartment door as the driver was attempting to disengage from the collision with the parked vehicle. Maurer testified that the interior light came on at one point, and that a man was driving the car. Hicks was less sure of the gender of the driver, but testified that he believed that the driver was a man. The evidence presented by the defense established that only Gayheart and Sullivan, a woman, were in the car after Radford got out. *Page 12 
 {¶ 66} Furthermore, another Fairborn police officer, Matt Berry, testified that he saw a man driving a white car matching the description of Gayheart's car driving in the general area at about 10:00 p.m. that evening.
 {¶ 67} Finally, in a conversation with Officer Foreman overheard by Officer Roman, who was standing by, Gayheart admitted that he was driving the car at the time of the collision. Both Foreman and Roman testified to this admission. At the police station, Gayheart recanted his admission, and claimed that Sullivan was driving. Although the following testimony of Officer Foreman is not entirely clear, it appears that Gayheart may, after the initial recantation of his admission, again admitted he was driving, and then again recanted his admission:
 {¶ 68} "A. I asked him why he had lied to me earlier. He apologized to me and told me that he had just lied to me, and that he actually was driving the vehicle. And he apologized for lying to me at that point, and he specifically pointed to Brenda Sullivan as was driving the vehicle in the end."
 {¶ 69} Gayheart testified that other than his possible sarcastic response to the police officer's insistence that he, Gayheart, had been the driver, he at all times denied that he was the driver.
 {¶ 70} We are not prepared to hold that the jury lost its way when it decided to credit the testimony of Maurer and Hicks that a man was driving the car, or when it decided to credit the testimony of the police officers that Gayheart admitted to having been the driver of the car at the time of the collision.
 {¶ 71} Gayheart's Third Assignment of Error is overruled. *Page 13 
 V {¶ 72} All of Gayheart's assignments of error having been overruled, the judgment of the trial court is Affirmed.
DONOVAN, P.J., and BROGAN, J., concur. *Page 1